T.C. Memo. 2007-130


UNITED STATES TAX COURT


MILA ALEMASOV AND VICTOR POPOV, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11223-05.                Filed May 22, 2007.


<u>William E. Taggart, Jr.</u>, for petitioners.

<u>Margaret Burow</u>, for respondent.


MEMORANDUM OPINION


COUVILLION, <u>Special Trial Judge</u>:  Respondent determined a
$14,241 deficiency in petitioners' Federal income tax for 2002, a
$570 addition to tax under section 6651(a)(1) for failure to file
timely, and a $314 accuracy-related penalty under section

6662(a).[1]  After concessions,[2] there are two issues for decision:
(1) Whether petitioners are entitled to deductions under section
162(a) for expenses relating to a real estate activity, and (2)
whether petitioners are liable for an addition to tax under
section 6651(a)(1) for failure to file their 2002 return timely.

Background

At the time the petition was filed, Mila Alemasov
(petitioner) and Victor Popov were married and resided in San
Francisco, California.[3]

Petitioner was born in Russia, immigrated to the United
States when she was a child, and has resided in San Francisco
since 1979.  She has a bachelor's degree in international
business from San Francisco State University and a master's

---

[1]Unless otherwise indicated, section references are to the
Internal Revenue Code in effect for the year at issue, and all
Rule references are to the Tax Court Rules of Practice and
Procedure.

[2]In the notice of deficiency, respondent determined that
petitioners had rental income of $3,876 not reported on Schedule
E, Supplemental Income and Loss.  At trial, respondent conceded
$3,692 of this adjustment.  Respondent conceded the remaining
$184 of the adjustment in his brief to the Court.  These
concessions prompted respondent to further concede that
petitioners were not liable for the sec. 6662(a) accuracy-related
penalty since that adjustment was based on the conceded
unreported rental income.

[3]The parties did not submit an agreed stipulation of facts
at trial as required by Rule 91(a); yet, of the 17 exhibits
accepted into evidence during the trial, 16 were filed as joint
exhibits.  Counsel for the parties are experienced attorneys
before this Court, and such practices are not in accord with the
spirit of this Court's Rules of Practice and Procedure.

degree in business and finance from the University of San Francisco. Petitioner held a number of jobs before 1998, the year she began working for Bank of America in the fields of finance and securities investment. She worked for Bank of America until she was released sometime in 2001.

In connection with her release, petitioner received "settlement fees" of $400,000 from Bank of America during 2002.[4] In addition, petitioner received unemployment compensation of $13,840 that year. With the money received from these sources, petitioner began an activity as a real estate finder and consultant, an activity that allowed her to attend to her two minor children.[5] Petitioner testified that she traveled to Hawaii, Korea, China, and Las Vegas during 2002 on behalf of her clients to search for prospective real estate investment opportunities. However, petitioner's lack of a salesperson's

---

[4]The nature and terms of these fees were not made part of the record; however, petitioners included the $400,000 as income on their income tax return for 2002.

[5]Petitioner decided to begin an activity as a real estate finder and consultant sometime in September 2001. Petitioner claimed that as a real estate finder she searched for real estate investments on behalf of clients interested in purchasing property. She would, assuming that properties she recommended were purchased, receive a fee for her services. At trial, petitioner conceded that she did not enter into any written agreements in 2002 with her clients. Although she testified that she had numerous e-mail exchanges with clients during the year at issue, she did not offer into evidence any of these e-mail communications. Petitioner claimed she had oral agreements regarding fee arrangements with her clients.

license inhibited her ability to enter into real estate transactions. During 2002, petitioner did not earn any income for her services as a real estate consultant and finder. In an effort to expand her business, petitioner obtained a salesperson's license during 2003 to enhance her ability to act on her clients' behalf.

Petitioners were granted an extension of time to August 15, 2003, to file their Federal income tax return for 2002; however, their joint return for that year was filed on September 16, 2003. Petitioners contend that their return preparer submitted a Form 2688, Application for Additional Extension of Time To File U.S. Individual Income Tax Return, requesting an extension of time to October 15, 2003, for the filing of their 2002 income tax return. Respondent has no record that such a request was made. According to respondent's Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, for 2002, a late filing penalty was imposed on September 21, 2003. However, respondent's records, the Form 4340, reflect that the penalty was abated on October 20, 2003.

On petitioners' 2002 joint income tax return, they reported adjusted gross income of $357,729 and total tax due of $94,659. Petitioners included with their 2002 joint income tax return a

$27,000 payment.[6]  The 2002 return reported as income the $400,000 settlement fee that had been paid to petitioner by Bank of America and included a Schedule C, Profit or Loss From Business, relating to an activity with the principal business purpose described as "Real Estate Investments".  The return reflected a loss of $31,261 from the Schedule C activity.

Petitioners' 2002 Federal income tax return was selected for examination.  They were issued information document requests by the IRS and were requested to substantiate the deductions claimed on Schedule C of their 2002 return.  When petitioners did not provide the requested documents timely, respondent issued a 30-day letter proposing to disallow all of the claimed Schedule C expenses.  Petitioners protested the proposed deficiency and engaged the services of an enrolled agent; however, the agent was unable to resolve the matter with respondent's Appeals Office.

Respondent then issued to petitioners a notice of deficiency determining a deficiency of $14,241 in their Federal income tax for 2002.  In the notice of deficiency, respondent disallowed all of petitioners' claimed Schedule C deductions for 2002 for the reason that

> Since you did not establish that the business expense
> shown on your tax return was paid or incurred during

---

[6]The unpaid portion of the $94,659 is not at issue in this case, and there are indications in the record that petitioners made subsequent payments on the 2002 liability.

the taxable year and that the expense was ordinary and necessary to your business, we have disallowed the amount shown.

We are not allowing the amount on your return because we did not get an answer to our request for information to support your entries. You cannot claim deductions, credits, exemptions, or other tax benefits unless you can show that you meet all of the requirements to be eligible for them.

Petitioners filed a timely petition in this Court.

## Discussion

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace, and the taxpayer has the burden of proving entitlement to any claimed deduction. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, supra. This includes the burden of substantiation. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

At the commencement of trial, petitioners filed a motion to shift the burden of proof to respondent under section 7491(a), contending that they had provided credible evidence to support their Schedule C deductions for the year at issue as required by section 7491(a)(2). Respondent objected to petitioners' motion.

Section 7491(a) places the burden of proof on the Commissioner as to any issue upon which the taxpayer introduces credible evidence and which is relevant to the taxpayer's tax liability.  However, for the burden of proof to be placed on the Commissioner, the taxpayer must comply with the substantiation and record-keeping requirements of the Internal Revenue Code. Moreover, section 7491(a) requires that the taxpayer cooperate with reasonable requests for "witnesses, information, documents, meetings, and interviews".  Sec. 7491(a)(2)(B).

The notice of deficiency, upon which this case is based, states with respect to the expenses claimed:  "We are not allowing the amount on your return because we did not get an answer to our request for information to support your entries." Petitioners failed to cooperate with reasonable requests by respondent for documents as required by section 7491(a)(2)(B). On the record, the Court has denied petitioners' motion.

The first issue is whether petitioners are entitled to deductions under section 162(a) for expenses which they claim petitioner incurred in a real estate trade or business activity for profit.

Section 162(a) allows a deduction for all ordinary and necessary expenses incurred in carrying on a trade or business. Section 212 allows a deduction for all ordinary and necessary expenses paid or incurred for the production of income.

Generally, a taxpayer must establish that deductions claimed under sections 162 and 212 are ordinary and necessary expenses, and the taxpayer must maintain records to substantiate the deductions claimed. Sec. 6001; Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965); sec. 1.6001-1(a), (e), Income Tax Regs.

On Schedule C of their 2002 Federal income tax return, petitioners reported the following gross income and expenses:

| Income | | -0- |
|---|---|---|
| Expenses: | | |
| Advertising | $376 | |
| Car and truck | 4,991 | |
| Depreciation | 8,586 | |
| Other interest | 336 | |
| Office | 1,689 | |
| Supplies | 143 | |
| Travel | 9,615 | |
| Meals and entertainment | 1,940 | |
| Other | 3,585 | |
| Total | $31,261 | |
| Loss | | ($31,261) |

With respect to certain business expenses subject to section 274(d), more stringent substantiation requirements apply than with respect to other ordinary and necessary expenses. Section 274(d) disallows deductions for traveling expenses, gifts, and meals and entertainment, as well as expenses related to listed property, unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement: (1) The amount of the expense; (2) the time and place of the travel or entertainment, or the date and description of

the gift; (3) the business purpose of the expense; and (4) the business relationship to the taxpayer of the persons entertained or receiving the gift.  The substantiation requirements of section 274(d) are designed to encourage taxpayers to maintain records and documentary evidence to substantiate each element of the expense sought to be deducted.  Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). The term "listed property" is defined in section 280F(d)(4) and includes any passenger vehicle, any other property used as a means of transportation, and computers.  Sec. 280F(d)(4)(A)(i), (ii), (iv).

Under section 274(d), substantiation by means of adequate records requires a taxpayer to maintain a diary, a log, or a similar record, and documentary evidence that, in combination, are sufficient to establish each element of each expenditure or use.  Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).  To be adequate, a record must generally be written, and each element of an expenditure or use that must be substantiated should be recorded at or near the time of that expenditure or use.  Sec. 1.274-5T(c)(2)(ii)(A), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

The primary evidence that petitioners paid or incurred the expenses related to their real estate activity consists of petitioner's testimony and spreadsheets that she compiled for

each of the categories of expenses.  In addition to petitioner's
testimony, petitioners provided a host of credit card statements
to purportedly substantiate the claimed expenses.  Notations were
made beside some of the charges, and petitioners, in preparation
for trial, categorized some of the expenses on spreadsheets
attached to the credit card statements.  In particular, the Court
considers the expenses claimed by petitioners as follows.

Advertising Expenses

With respect to the advertising expenses of $376,
petitioners' spreadsheet reflects payments of cash in March,
June, July, and September of 2002 for advertisements in Russian
papers directed to real estate investors.  Aside from the
spreadsheet, no evidence, such as copies of the advertisements,
was offered to support the claimed deduction for advertising.
Petitioners' evidence does not satisfy the Court that those
expenses were incurred.  Accordingly, the Court sustains
respondent's determination disallowing the claimed advertising
expenses.

Car and Truck Expenses

Petitioners claimed car and truck expenses of $4,991.  To
substantiate these expenses, petitioners provided a spreadsheet
detailing the date, location, and amount of each expense, along
with a very brief description of the nature of the expense.  For
almost every car and truck expense that petitioners claimed to

have paid in cash, they did not provide receipts or any type of documentary evidence to support the payment.[7]  With regard to the other claimed car and truck expenses, petitioners provided a small number of receipts.  Most of the documentation to support these expenses consisted of monthly credit card statements or annual gas card statements.

Petitioners presented no records to substantiate that the car and truck expenses claimed on their Schedule C for 2002 were related to the real estate activity or were other than personal expenses.  Although statements from Chevron and Shell reflected the total amounts charged on credit cards during 2002, there is no documentation or other evidence to show that the charges were for ordinary and necessary expenses related to the claimed business rather than for personal use.  Similarly, other receipts and monthly credit card statements show that money was paid to Union 76 and Geary Automotive Service; however, petitioners likewise failed to establish that these were ordinary and necessary expenses of the real estate activity.  For these reasons, respondent's determination disallowing petitioners' Schedule C car and truck expenses is sustained.

---

[7]The claimed expenses for which no receipts were provided include those for gasoline, repairs, and licenses.

Depreciation

Petitioners claimed an $8,586 depreciation and section 179 expense deduction. Pursuant to section 167, a depreciation deduction is generally allowed for the exhaustion, wear, and tear of property used in a trade or business or held for the production of income. The purpose of the deduction for depreciation is to allow the taxpayer to recover over the useful life of the property its cost or other basis. United States v. Ludey, 274 U.S. 295, 300-301 (1927).

Petitioners claimed a depreciation deduction on their Schedule C for a vehicle placed in service in 2002 as well as a computer purchased during that year. Other than petitioner's uncorroborated, self-serving testimony, which we do not find probative, petitioners offered nothing to substantiate that the vehicle and the computer were not used primarily for personal purposes. Accordingly, on account of the lack of substantiation that those items of property were used in the real estate activity or otherwise held for the production of income, respondent is sustained in disallowing the depreciation deduction of $8,586.

Other Interest

Petitioners claimed a deduction of $336 for "other interest", which related to interest on their credit cards. Petitioners offered into evidence statements of their Chevron and

Visa credit cards. On their Chevron credit card, petitioners incurred monthly finance charges every month during 2002. The five Visa credit card statements show, along with interest and finance charges, transactions at Kinko's, Safeway, Whole Foods Market, and Bally Total Fitness, among other places, indicating that the interest related substantially to credit card charges for personal purposes.

Section 262 expressly disallows deductions for personal, living, or family expenses. Petitioners failed to substantiate that any interest expense associated with the credit card charges was other than a nondeductible personal expense. No portion of the interest was shown to be related to the real estate activity. The claimed interest, therefore, is not allowed as a deduction.

Office Expenses

Petitioners offered monthly credit card statements and copies of two checks to substantiate the $1,689 for office expenses. Absent further corroborating evidence to support these expenses and their relationship to the real estate activity, the Court sustains respondent's disallowance of these expenses.[8]

---

[8]The $1,689 also included what appear to be utility expenses attributed to two vendors or service providers listed as "PG&E" and "Water". Regardless of their classification, petitioners did not establish that those expenses were related to the real estate activity or were other than personal.

Petitioners also claimed as office expenses cellular phone charges to T-Mobile. Cellular phones are classified as listed property under sec. 280F(d)(4)(A)(v), and petitioners offered no

(continued...)

Supplies

Petitioners claimed a $143 deduction for supplies. To substantiate this item, petitioners submitted two Visa credit card statements. The statements indicate petitioners made purchases at Aaron Brothers, Office Max, and The Container Store in May and November of 2002; the spreadsheets petitioner prepared indicate that these expenses were incurred for frames, notebooks, pens, and "items". The relationship of these expenses to petitioner's real estate activity was not established. Petitioners also claim that they paid cash for some supplies, but they did not present any receipts or canceled checks to support these expenses.

On the basis of the submitted Visa credit card statements, it is clear that petitioners made purchases at stores that sell office supplies. There is no evidence, however, other than petitioner's self-serving testimony, which we do not find probative, that these expenses were related to or incurred in connection with petitioner's real estate activity. Without further substantiating evidence, the Court sustains respondent's determination disallowing such expenses.

---

[8](...continued)
evidence to satisfy the heightened substantiation requirements associated with listed property.

Travel

Petitioners contend that the $9,615 claimed for traveling expenses was for trips to Hawaii, Korea, China, Las Vegas, and Chicago, for the purpose of locating potential real estate investment opportunities for petitioner's clients. With the exception of expenses for airfare to Hawaii and Chicago, a rental car in Hawaii, lodging in Hawaii and Las Vegas, and a few incidental traveling expenses, petitioners contend that they paid the traveling expenses in cash. In support of these expenses, petitioners offered airline receipts, a few credit card statements, and two taxi cab receipts.

Although section 162(a) expressly permits a deduction for traveling expenses away from home in the pursuit of a trade or business, section 274(d) imposes strict substantiation requirements for deductions related to traveling expenses. A deduction for traveling expenses demands, pursuant to section 274(d), that the taxpayer substantiate by adequate records or by sufficient evidence the amount of the expense, the time and place of the travel, and the business purpose of the expense. On the record, the Court holds that petitioners' limited receipts and lack of evidence to corroborate their own statements fail to satisfy the strict substantiation requirements of section 274(d). See sec. 274(d); sec 1.274-5T(b)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Despite petitioner's

insistence that all of the traveling expenses were exclusively for a business purpose, the strict substantiation requirements of section 274(d) cannot be ignored. In addition, petitioner admitted at trial that her two minor children accompanied her on a claimed business trip to Hawaii. Section 274(m)(3) provides that, in general, no deduction is permitted for any traveling expenses paid for dependents accompanying a taxpayer on business travel. Accordingly, respondent's determination disallowing the claimed deduction for traveling expenses is sustained.

Meals and Entertainment

Petitioners claimed a Schedule C deduction of $1,940 for meals and entertainment.[9] The spreadsheet petitioners provided for these expenses listed the dates and locations of the meals, along with the clients' names and a very brief description of each client (i.e., "prospective investor" or "investment opportunity"). To support the amounts on the spreadsheet, petitioners included a number of monthly credit card statements and a few receipts. As for many of their other claimed Schedule C expenses, no receipts or other documentary evidence was provided for those expenses paid in cash.

Pursuant to section 274(d), a taxpayer, with respect to meals and entertainment, must substantiate the amount, time,

---

[9]Petitioners claimed meal expenses totaled $3,881, which they reduced by 50 percent as required by sec. 274(n).

place, and business purpose of the expenditure and must provide adequate records or sufficient evidence to corroborate the claimed expense. Sec. 274(d); sec. 1.274-5T(c)(1), Temporary Income Tax Regs., supra. In order to meet the "adequate records" requirement, a taxpayer must maintain an account book, diary, statement of expenses, or similar record and documentary evidence (such as receipts, paid bills, or similar evidence) which, when combined, establish each element of the expense that section 274(d) requires to be established. Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., supra. Petitioners' credit card statements and the spreadsheet that was created after the year at issue do not meet the adequate records requirement for meals and entertainment expenses of section 274(d) and the regulations because they fail to sufficiently corroborate petitioners' own statements. Id. Since petitioners did not provide the required substantiation for these expenses, they are not entitled to the deduction for meals and entertainment expenses.

Other Expenses

Petitioners claimed a deduction of $3,585 for other expenses, including books, postage, printing, Internet access at Kinko's, and other items. Aside from monthly credit card statements and nonitemized credit card receipts, petitioners offered no documentary evidence to support the claimed expenses. Additionally, petitioners did not establish that these expenses

were those of petitioner's real estate activity.  For these reasons, respondent is sustained in disallowing the claimed deduction for other expenses.

Section 6651(a)(1) Addition to Tax

Respondent determined that petitioners were liable for an addition to tax under section 6651(a)(1).  Under section 7491(c), the Commissioner has the burden of production in any court proceeding with respect to the liability of any individual for a penalty or addition to tax.  Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  In order to meet this burden of production, the Commissioner must come forth with sufficient evidence indicating that it is appropriate to impose, as in this case, an addition to tax for failure to file a timely return.  Id. at 446.  Once the Commissioner has met this burden, the taxpayer must come forward with evidence sufficient to persuade the Court that the Commissioner's determination is incorrect.  Id. at 447.

Section 6651(a)(1) imposes an addition to tax for failure to file a Federal income tax return by its due date, determined with regard to any extension of time for filing previously granted.  The addition equals 5 percent for each month that the return is late, not to exceed 25 percent.  Sec. 6651(a)(1).  An addition to tax under section 6651(a)(1) is imposed for failure to file a return on time unless the taxpayer establishes that the failure was due to reasonable cause and not willful neglect.  Sec.

6651(a)(1); United States v. Boyle, 469 U.S. 241, 245 (1985).
"Reasonable cause" requires the taxpayer to demonstrate that he
exercised ordinary business care and prudence. United States v.
Stanford, 979 F.2d 1511, 1514 (11th Cir. 1992). "Willful
neglect" is defined as a "conscious, intentional failure or
reckless indifference." United States v. Boyle, supra at 245.

Petitioners concede that, although they were given an
extension of time to file their 2002 return until August 15,
2003, the return was not filed until September 16, 2003. Since
the return for the year at issue was filed late, the only issue
that remains is whether the late filing is excused by reasonable
cause. Sec. 6651(a)(1); United States v. Boyle, supra at 245.
Petitioners' explanation for failure to file their return timely
was that their return preparer filed a Form 2688 to request
additional time to file their 2002 return. Respondent has no
record that such a request was made. Additionally, petitioners
contend that respondent's Appeals Office conceded the section
6651(a)(1) addition to tax. In support of this argument,
petitioners point to the Certificate of Assessments, Payments,
and Other Specified Matters, which was offered into evidence by
respondent and shows that, for the year at issue, respondent
abated the addition to tax on October 20, 2003. Respondent
denies making such a concession and insists that imposition of

the addition to tax for failure to file a timely return is appropriate.

Section 6213(a) prohibits assessment of a deficiency during the period within which a taxpayer may petition this Court for a review of that deficiency. Additionally, once a petition has been filed with this Court for review of a deficiency, assessment of that deficiency is prohibited until this Court's decision has become final. Id. A review of the record suggests that respondent abated the section 6651(a)(1) addition to tax because assessment was premature and in violation of the strictures of section 6213(a), not because the Appeals Office conceded the addition to tax.

Petitioners explained that they requested an additional extension of time to file because they had not yet compiled the information necessary to accurately file their return for the year at issue. The unavailability of records does not, however, establish reasonable cause for failure to file a return timely. See Elec. & Neon, Inc. v. Commissioner, 56 T.C. 1324, 1342-1344 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974); see also Ruddel v. Commissioner, T.C. Memo. 1996-125. Moreover, petitioners failed to establish what records were unavailable, and the record does not indicate that they attempted to obtain the information necessary to prepare their 2002 return from other sources. See Crocker v. Commissioner, 92 T.C. 899,

913 (1989) (section 6651(a) addition to tax upheld where taxpayers failed to show what records were needed or what actions they took to obtain such records).

To support the claim that their return preparer requested an additional extension of time to file their 2002 return, petitioners offered an unsigned copy of a Form 2688 and contend that this is similar to what was submitted.  Notwithstanding their attempt to shift responsibility for their late filing to their return preparer, such reliance on one's accountant or return preparer does not constitute "reasonable cause" for a late filing under section 6651(a).  United States v. Boyle, supra at 252; see also Ruddel v. Commissioner, supra.  On this record, the Court holds that petitioners are liable for the section 6651(a)(1) addition to tax.

The Court has considered all other arguments advanced by the parties, and, to the extent those arguments have not been specifically addressed, the Court concludes they are without merit.

Decision will be entered

under Rule 155.